IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALEXANDER Y. GROYS,

     Plaintiff,

v.

CITY OF RICHARDSON, TEXAS,

     Defendant.

Case No. 3:20-cv-03202-G-BT

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Defendant the City of Richardson, Texas (the "City") has filed a Motion to Dismiss this *pro se* civil action, arguing that the Court lacks subject matter jurisdiction and, in the alternative, that Plaintiff Alexander Groys has failed to state a claim upon which relief may be granted. Def.'s Mot. Dismiss (ECF No. 16). For the following reasons, the Court should GRANT the City's Motion.

## Background

Groys is a convicted sex offender who is required to register with the Texas Department of Public Safety's Sex Offender Database.[1] *See* Am. Compl. 7-8 (ECF

---

[1] In 2014, in the Eastern District of Texas, Groys pleaded guilty to possession of child pornography. *United States v. Groys*, Case No. 4:14-CR-111-1 (E.D. Tex). Thereafter, the trial court sentenced him to 78-months' imprisonment. The Fifth Circuit dismissed his appeal as frivolous. *United States v. Groys*, 772 F. App'x 140, 141 (5th Cir. 2019) (Mem.) (per curiam). Groys filed this lawsuit in 2020 while he was still incarcerated in Hutchins State Jail. *See* Am. Compl. 3-4. Following his release in 2020, he established a residence in Dallas, Texas. *See* Notice Rental Agreement 3 (ECF No. 13).

No. 8); Def.'s Br. Def.'s Mot. Dismiss 13 (ECF No. 17). By this lawsuit, he contends that a City ordinance, ordinance no. 35278 (the "Ordinance"), prevents him from living in his parents' home on Honeysuckle Drive, in Richardson Texas. Am. Compl. 3-4, 8.

The Ordinance, enacted by the City in 2006, prohibits sex offenders who appear on the sex offender database from "establish[ing] a permanent residence or temporary residence within 2,000 feet of any premises where children commonly gather." RICHARDSON CITY CODE, Ch. 13, art. VIII, § 13-151. An individual's appearance on the database is prima facie evidence that the Ordinance applies—a culpable mental state is not required. *Id.* §§ 13-152, 13-153. Each offense under the Ordinance is deemed a misdemeanor punishable by a fine of up to $500. *Id.* § 13-155.

Groys does not allege that the City has enforced the Ordinance against him. Instead, he contends that the residency restriction prohibits him from living with his parents on Honeysuckle Drive, as their home lies approximately 1,800 feet away from a park, which falls within the City's definition of a "premises where children commonly gather." *Id.* at 4, 8; *see also* RICHARDSON CITY CODE, Ch. 13, art. VIII, § 13-150 (defining "premises where children commonly gather" to include "a public park, private or public school, or day care center or any public or non-profit recreational facility, as such terms are defined in the Comprehensive Zoning Ordinance of the City of Richardson"). Groys therefore alleges that the City's enforcement of the Ordinance would render him homeless, in violation of his rights

under the First and Eighth Amendment of the United States Constitution, *Id*. at 4, 7-8, as well as those under the Due Process Clause and the *Ex Post Facto* Clause. Pl.'s Resp. 5-12. To remedy these violations, Groys asks the Court to enjoin the City from enforcing the Ordinance as it is written. Am. Compl. 4, 8.

The City moves to dismiss Groys's claims on grounds that the Court lacks subject matter jurisdiction over Groys's claims because Groys lacks standing and because his claims are either moot or not yet ripe. *See* Def.'s Mot. Dismiss 1. Alternatively, the City argues, dismissal is appropriate because Groys failed to sufficiently plead enough facts to state a claim for relief. *Id*. at 1-2. Groys responded to the City's motion by filing a document titled, "Plaintiff's Motion to Dismiss Defendant(s) Motion(s) to Dismiss and Summary Judgment Granting Plaintiff to Reside at 2708 Honeysuckle Dr. Richardson [sic] Texas, 75082." *See* Pl.'s Resp. (ECF No. 20). Instead of addressing the points raised in the City's Motion, Groys uses this filing to rail against the mistreatment of sex offenders in the United States and to assert a variety of new legal claims regarding violations of the Due Process Clause and the *Ex Post Facto* Clause. *See generally* Pl.'s Resp. The City replied to Groys's filing on April 20, 2021. Def.'s Reply (ECF No. 23). Accordingly, the City's Motion is fully-briefed and ripe for determination.

## Legal Standards and Analysis

### 12(b)(1)

The City argues that dismissal is proper under Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction over Groys's

claims or, in the alternative, under Rule 12(b)(6) because Groys fails to sufficiently state a claim for relief. When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam); *Davis v. Dallas Cnty. Tex. Child Support Enf't Agency*, 2021 WL 1111164, at *2 (N.D. Tex. March. 2, 2021) (Rutherford, J.), *rec. adopted*, 2021 WL 1118372 (Mar. 23, 2021). Thus, the Court will address the City's jurisdictional arguments first.

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation marks and citation omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted). The party asserting jurisdiction must allege the jurisdictional basis "affirmatively and distinctly"; it cannot be "established argumentatively or by mere inference." *Ill. Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983) (citations omitted).

The Fifth Circuit recognizes two types of challenges to a federal court's subject-matter jurisdiction—"facial" attacks, which are based solely on the pleadings, and "factual" attacks, which are based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also Ramming*, 281 F.3d at 161 (citations omitted) ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Whether the attack is facial or factual, however, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citation omitted).

When a defendant files a Rule 12(b)(1) motion to dismiss without evidentiary materials supporting it, the attack is facial, and the Court need only consider the sufficiency of the allegations in the plaintiff's complaint. *Paterson*, 644 F.2d at 523. Here, the City filed its Motion to Dismiss unaccompanied by exhibits or appendices—other than a copy of the Ordinance—thus making a "facial" attack on the Court's subject-matter jurisdiction.

In its Motion, the City argues that the Court lacks subject matter jurisdiction because Groys does not have standing and because his claims are moot or not yet ripe. Def.'s Mot. Dismiss 1, 14. As stated, Groys does not address these arguments in his response. Regardless, the Court agrees that Groys's claims are moot and thus it lacks subject matter jurisdiction to adjudicate Groys's claims.

Article III of the United States Constitution limits federal jurisdiction to actual "[c]ases" and "[c]ontroversies." U.S. CONST. art. III, § 2; *see also Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). "[C]ourts may not decide cases that since have become moot because there is no longer a live case or controversy." *Tex. v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 449 (5th Cir. 2019). A case becomes moot when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).

With mootness, plaintiffs must demonstrate that they have a personal stake in the outcome of the litigation, and it continues through "all stages of review, not merely at the time the complaint is filed. A case that becomes moot at any point during the proceedings is . . . outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, ––– U.S. ––––, 138 S. Ct. 1532, 1537 (2018) (citation and quotation marks omitted); *see also* FED. R. CIV. P. 12(h)(3) (noting that where the court lacks subject-matter jurisdiction, the action must be dismissed). Where the issue of mootness arises, the court must resolve it before it can assume jurisdiction over the case. *N.C. v. Rice*, 404 U.S. 244, 246 (1971).

In the present action, the City asserts that Groys's claims are moot because he established a residence in Dallas, thus alleviating the alleged injury of homelessness. Def.'s Br. Def.'s Mot. Dismiss 14. Groys does not dispute this assertion.

In a similar case, the Fifth Circuit held that a plaintiff's claims challenging a city ordinance imposing residency restrictions on registered sex offenders were moot because the plaintiff established a residence in another city. *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 521 (5th Cir. 2014). In *Duarte*, the plaintiff, Aurelio Duarte, challenged a City of Lewisville ordinance prohibiting registered child sex offenders from establishing a residence within 1,500 feet of any premises where children commonly gather. *Id.* at 515. A Texas court had previously sentenced Duarte to eight years in prison for the online solicitation of a minor, thus requiring him to register with the Texas Department of Public Safety's Sex Offender Database upon his release. *Id.* at 516. Given his status as a registered child sex offender, Duarte and his family moved into a one-bedroom motel room and searched for another residence for nearly eighteen months to no avail. *Id.* at 516.

Duarte and his family thereafter brought suit seeking damages and injunctive relief against the City of Lewisville under 42 U.S.C. § 1983 and for violations of the Fourteenth Amendment Due Process and Equal Protection Clauses, Double Jeopardy Clause, and *Ex Post Facto* Clause. *Id.* at 515; *see also Duarte v. City of Lewisville, Tex.*, 2013 WL 3367292, at *3 (E.D. Tex. July 3, 2013), *rev'd sub nom. Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514 (5th Cir. 2014). The Fifth Circuit found that the Lewisville ordinance made it more difficult, if not impossible, for Duarte to buy or rent a home in Lewisville, and held that he had standing to challenge the ordinance's residency restriction, despite the

fact that Lewisville never enforced the ordinance against him. *Duarte*, 759 F.3d at 518.

The City of Lewisville also argued that Duarte's claims based on the ordinance's residency restriction were moot because Duarte established a residence in another city. *Id.* at 521. However, unlike Groys, Duarte asserted claims for monetary relief. And those claims salvaged his lawsuit, as the court recounted the well-established principle "that a claim for nominal damages avoids mootness." *Id.* (internal quotation marks omitted) (quoting *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748-49 (5th Cir. 2009)). Because Duarte's complaint explicitly sought "compensatory damages" and "nominal damages pursuant to . . . [§] 1983," the court held that his claims were "sufficient to defeat mootness." *Id.*

In this case, Groys does not seek monetary damages. He merely requests that this Court enjoin the City from rendering him homeless by preventing him from living in his parents' home. Am. Compl. 4, 8. But having established a residence in Dallas, he has no injury to remedy—and there are no monetary claims to defeat mootness. The Court infers from *Duarte* that but for the existence of monetary claims, Duarte's claims would have been moot because he had already established a residence elsewhere. Accordingly, the Court finds that Groys's claims are moot, which deprives the Court of subject matter jurisdiction.

Ordinarily, a *pro se* litigant should be afforded an opportunity to amend his complaint before it is dismissed. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir.

1998) (per curiam). However, leave to amend is not required if the amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). An amendment is futile if it could not survive a Rule 12(b)(6) motion. *Id.*; *Gorfinkel v. United States Citizenship & Immigr. Serv.*, 2021 WL 1009319, at *3 (N.D. Tex. Feb. 12, 2021) (Rutherford, J.), *rec. adopted*, 2021 WL 977064 (Mar. 16, 2021).

Here, the Court should not permit Groys's to amend his complaint to add a claim for monetary damages and remedy the mootness problem because his claims cannot survive a Rule 12(b)(6) challenge.

### 12(b)(6)

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion therefore a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

The City attacks each of Groys's claims under Rule 12(b)(6). The Court will address each claim in turn.

I.    <u>Groys cannot state a claim under the Eighth Amendment or the *Ex Post Facto* Clause because the Ordinance is not punitive.</u>

Groys avers that the City's residency restriction amounts to cruel and unusual punishment under the Eighth Amendment. Am. Compl. 3, 7. And though he does not include it in his Amended Complaint, Groys implies—in his response—that enforcement of the Ordinance would constitute retroactive punishment under the *Ex Post Facto* Clause. *See* Pl.'s Resp. 2. Even if Groys's claims under the *Ex Post Facto* Clause were properly before the Court, s*ee Middleton v. Life Ins. Co. of N. Am.*, 2010 WL 582552, at *5 (S.D. Tex. Feb. 12, 2010) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)) (reasoning that a claim raised for the first time in response to a motion to dismiss was not properly before the court), Groys is unable to state a claim under either the Eighth Amendment or the *Ex Post Facto* Clause.

A statute can only violate the Eighth Amendment or the *Ex Post Facto* Clause if the statute is punitive. *Does 1-7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019) (per curiam) (citing *Smith v. Doe*, 538 U.S. 84, 92-93, 96-97 (2003)). Whether a statute is punitive is subject to the so-called "intent-effects test:" "whether 1) the legislature intended the sanction to be punitive, and 2) the sanction is 'so punitive' in effect as to prevent courts from legitimately viewing it as regulatory or civil in nature." *Id.*; *Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870, 872 (5th Cir. 2001). If the legislature did intend to impose a punishment, the inquiry ends. *Smith*, 538 U.S. at 92. However, if the legislature's stated intent was not to impose a punishment, "'only the clearest proof' will suffice to override legislative intent and

transform what has been denominated a civil remedy into a criminal penalty."
*Hudson v. United States*, 522 U.S. 93, 100 (1997).

The determination of whether a statutory scheme is civil or criminal is initially a question of statutory construction. *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). Courts must first ask "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *U.S. v. Ward*, 448 U.S. 242, 248 (1980). While the City Code does not express the objective behind the Ordinance, the "imposition of restrictive measures on sex offenders adjudged to be dangerous is a legitimate nonpunitive governmental objective and has been historically so regarded." *Smith*, 538 U.S. at 93 (internal quotation marks omitted) (quoting *Hendricks*, 521 U.S. at 363). In this case, as in *Smith* and *Hendricks*, nothing on the face of the Ordinance suggests that the City "sought to create anything other than a civil . . . scheme designed to protect the public from harm." *Id.* (ellipses in original) (internal quotation marks omitted); *Hendricks*, 521 U.S. at 361. The Court therefore finds that the City did not intend the Ordinance to impose punishment. *See Duarte*, 136 F. Supp. 3d at 775 (finding that a city did not intend to impose a punishment in enacting an ordinance imposing a residency restriction on registered child sex offenders).

Next, the Court must determine whether the effect of the Ordinance is so punitive that it negates the City's intent to be nonpunitive. *See id.* To aid in this inquiry, courts look to the seven factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). *United States v. Young*, 585 F.3d 199, 206 (5th Cir. 2009).

Courts have applied these factors to claims, among others, arising under both the Eighth Amendment and the *Ex Post Facto* Clause. *See Smith*, 538 U.S. at 97; *Does #1-7 v. Abbott*, 345 F. Supp. 3d 763, 775 (N.D. Tex. Nov. 19, 2018), *aff'd sub nom. Does 1-7 v. Abbott*, 945 F.3d 307 (5th Cir. 2019).

Those factors most useful to the Court in analyzing legislation related to sex-offender registration include five considerations:

> whether, in its necessary operation, the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is excessive with respect to this purpose.

*See Smith*, 538 U.S. at 97; *Abbott*, 945 F.3d at 314. This list is "certainly neither exhaustive nor dispositive," *Ward*, 448 U.S. at 249, but serves merely as a "useful guidepost." *Hudson*, 522 U.S. at 99. The Court will consider each factor in turn.

First, the Court has already recognized that the "imposition of restrictive measures on sex offenders adjudged to be dangerous is a legitimate nonpunitive governmental objective and has been historically so regarded." *Smith*, 538 U.S. at 93 (internal quotation marks omitted) (quoting *Hendricks*, 521 U.S. at 363). Similar restrictions did not constitute a constitutional violation, as child sex offenders like Groys may establish a residence in the City outside of the restricted areas and because the Ordinance does not prohibit Groys from participating in the community, only from establishing a residence in certain areas. *See Duarte*, 136 F.

13

Supp. 3d at 776-77. The potential $500 fine, though not imposed upon Groys, would also fail to provide Groys with a sufficient claim, for the imposition of fixed monetary fines has "been recognized as enforceable by civil proceedings since the original revenue law of 1789." *Helvering v. Mitchell*, 303 U.S. 391, 400 (1938); *see also Hudson*, 522 U.S. at 496. Accordingly, this factor weighs against finding the Ordinance punitive.

Second, the disabilities or restraints imposed by the Ordinance do not rise to the level of creating punitive legislation. Imprisonment is the paradigmatic affirmative disability or restraint. *Smith*, 538 U.S. at 100; *Hudson*, 522 U.S. at 104 (internal quotation marks omitted) (quoting *Flemming v. Nestor*, 363 U.S. 603, 617 (1960)) ("While petitioners have been prohibited from further participating in the banking industry, this is certainly nothing approaching the infamous punishment of imprisonment."). Minor or indirect disabilities or restraints that do not rise to this level are unlikely to be punitive. *See Doe v. Miller*, 405 F.3d 700, 720 (8th Cir. 2005). The District Court in *Duarte*—upon remand–found that the similar ordinance restricting where child sex offenders could establish a residence was a relatively minor restraint because the ordinance imposed no physical constraint that resembled imprisonment. *Duarte*, 136 F. Supp. 3d at 776. The same reasoning applies here, as Groys has established another residence and is not subject to complete exclusion from Richardson. *See id*. Accordingly, this factor also weighs against finding the Ordinance to be punitive.

Third, the Ordinance does not promote the traditional aims of punishment—namely, retribution and deterrence—to the extent that the Court should find the Ordinance punitive. Even if the Ordinance does deter crime, the mere presence of a deterrent effect alone does not render the sanctions of the residency restraint criminal punishment. *See Smith*, 538 U.S. at 102. Indeed, "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Hudson*, 522 U.S. at 105. Regarding retribution, "[w]hile any restraint or requirement imposed on those who commit crimes is at least potentially retributive in effect," sanctions do not constitute criminal punishment as long as they are "reasonably related to the danger of recidivism." *See Smith*, 538 U.S. at 102; *Miller*, 405 F.3d at 720.

Here, the Ordinance is reasonably related to the dangers of recidivism among registered child sex offenders. *See Duarte*, 136 F. Supp. 3d at 778-79. To the extent that the Ordinance promotes deterrence or retribution, such an effect is minor and indirect. *See id.* Accordingly, this third factor also supports the conclusion that the Ordinance is not punitive.

Fourth, as stated, the Ordinance has a rational connection to a nonpunitive purpose. Whether or not a rational relationship exists between legislation and its purpose is the most significant factor in determining punitive effect. *See U.S. v. Ursery*, 518 U.S. 267, 290 (1996). A "close or perfect fit" is not required. *Smith*, 538 U.S. at 103. The district court in *Duarte* found that a rational connection

existed between a residency restriction and its nonpunitive purpose because child sex offenders pose a high risk of recidivism and localities have a legitimate interest in protecting the community. *See Duarte*, 136 F. Supp. 3d at 779-81.

Similarly, here, there is a rational connection between prohibiting convicted child sex offenders from living within 2,000 feet of places where children commonly congregate and the nonpunitive goal of protecting children from recidivist child sex offenders. Accordingly, this "most significant" factor also weighs in favor of finding the Ordinance nonpunitive.

Finally, the Ordinance is not excessive in relation to its purpose. This inquiry "is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105.

The Ordinance is not excessive for the same reasons found by the district court in *Duarte*: it only applies to *child* sex offenders, RICHARDSON CITY CODE § 13-151; it has a "grandfather" clause allowing child sex offenders to retain their established residence if established before passage of the Ordinance, *id.* § 13-154(a); child sex offenders need not forfeit their residence if an area where children commonly gather opens after they have already established a residence, *id.* § 13-154(d); and other affirmative defenses are made available, *id.* § 13-154(b), (c), (e). *See Duarte*, 136 F. Supp. 3d at 782. Accordingly, this factor favors a nonputative finding as well.

16

Having considered each of the factors laid out in *Kennedy* and *Smith*, the Court concludes that the Ordinance is not putative. Groys is therefore unable to state a claim under the Eighth Amendment or the *Ex Post Facto* Clause. *See Abbott*, 945 F.3d at 313 ("A statute can violate the *Ex Post Facto* Clause . . . [and] the Eighth Amendment . . . only if the statute is punitive.").

II.    <u>Groys cannot sufficiently state a claim under the First Amendment.</u>

"The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgement of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). Governments, including municipal governments vested with state authority, therefore "ha[ve] no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

Groys claims that the City violated his First Amendment rights without support and without identifying which specific provision of the First Amendment the City allegedly violated. *See* Am. Compl. 8. Beyond his conclusory allegation, Groys does not invoke his right to freedom of speech, assembly, petition, or religion. It is therefore unclear how the Ordinance has deprived Groys of any rights protected under the First Amendment.

And to the extent that Groys asserts a First Amendment right of meaningful access to the courts, such a claim also fails. The Supreme Court has not extended the right of access to the courts "to encompass more than the ability of an inmate

to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Bruce v. LaSalle Sw. Corrs.*, 2018 WL 3626358, at *1 (N.D. Tex. June 22, 2018) (Rutherford, J.), *rec. adopted*, 2018 WL 3618463 (N.D. Tex. July 30, 2018)). As of yet, neither the Fifth Circuit nor the Supreme Court has recognized a universal right of access to the courts based on the First Amendment. *See* Carol Rice Andrews, *A Right of Access to Court Under the Petition Clause of the First Amendment: Defining the Right*, 60 Ohio St. L. J. 557, 557 (1999) (explaining that the "average person in an ordinary civil case has not had" a First Amendment right of access to the courts).

Groys was incarcerated at the time he filed his initial Complaint but he provides no evidence that jail officials impaired his ability to prepare and transmit necessary legal documents—much less that the City somehow deprived him of this right. Even if there is a right of access to the courts for non-inmates, Groys cannot identify any evidence that the City deprived him of access to the courts after his release from jail. Groys has already had his day in court—both a criminal trial and an appeal. Additional process is not required for imposing regulatory burdens on individuals, like Groys, convicted of crimes. *Smith*, 538 U.S. at 104 (citing *De Veau v. Braisted*, 363 U.S. 144, 160 (1960); *Hawker v. People of N.Y.*, 170 U.S. 189, 197 (1898)). Accordingly, Groys cannot plausibly state a claim for relief under the First Amendment.

III.    <u>The Ordinance does not violate Groys's substantive or procedural due process rights.</u>

Without more, Groys provides an amalgam of jurisprudence regarding the Due Process Clause. Pl.'s Mot. Dismiss Def.'s Mot. Dismiss 1-2, 4-9, 11. Even reading this filing liberally as alleging due process violations, the Court still finds that Groys cannot state a claim for violations under the Due Process Clause.

"[T]he touchstone of due process is protection against arbitrary action of government." *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "To state a claim under the Due Process Clause, Plaintiff 'must first identify a life, liberty, or property interest protected by the" Fifth Amendment, "and then identify a [federal] action that resulted in a deprivation of that interest." *Poloceno v. Dallas Indep. Sch. Dist.*, 2019 WL 2568681, at *3 (N.D. Tex. June 21, 2019) (Scholer, J.) (internal quotation marks omitted) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995)), *aff'd*, 826 F. App'x 359 (5th Cir. 2020). Though the original citation reads "a life, liberty, or property interest protected by the *Fourteenth* Amendment and then identify a *state* action," *Poloceno*, 2019 WL 2568681, at *3 (emphasis added), "[t]he 14th Amendment, it has been held, legitimately operates to extend to the citizens and residents of the states the same protection against arbitrary state legislation affecting life, liberty, and property as is offered by the 5th Amendment against similar legislation by Congress." *Hibben v. Smith*, 191 U.S. 310, 325 (1903) (Peckham, J.); *accord McGraw v. Heaton*, 2017 WL 1157221, at *4 (N.D. Tex. Mar. 9, 2017), *rec. adopted*, 2017 WL 1155831 (N.D. Tex. Mar. 27, 2017).

Thus, the requirements of the Fourteenth and Fifth Amendment due-process clauses are functionally identical except that Fifth Amendment due process applies to federal actors. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In the present action, Groys cannot identify a fundamental right or interest protected by the Due Process Clause. As explained by the district court in *Duarte*, a convicted child sex offender does not have a fundamental right to live wherever he wishes. *See Duarte*, 136 F. Supp. 3d at 788; *see also Miller*, 405 F.3d at 710 (holding that a residency restriction for registered sex offenders did not implicate any fundamental right that would trigger strict scrutiny of the statute). Even if the Ordinance is more restrictive than other similar city ordinances, and even if sex-offender registries have questionable efficacy, the Ordinance "still advances the nonpunitive public purpose of defending public safety"—as stated. *See Abbott*, 945 F.3d at 315.

Assuming that Groys has an interest in living wherever he wishes, he still fails to state a claim for violation of his procedural due process rights. When a state interferes with such an interest, "the procedures attendant upon that deprivation [must be] constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In this Circuit, however, "no further process is due before imposing sex offender conditions" upon individuals convicted of a sex offense. *See*

*Conn. Dept' of Pub. Safety v. Doe*, 538 U.S. 1, 7-8 (2003); *Duarte*, 858 F.3d at 352-53; *King v. McCraw*, 559 F. App'x 278, 283 (5th Cir. 2014) (per curiam) (unpublished); *Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010). An individual "convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process." *Meza*, 607 F.3d at 401 (quoting *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997)).

Therefore, the City was under no obligation to grant Groys an additional hearing before subjecting him to the Ordinance—which it is yet to do. Accordingly, Groys has not suffered any violation of his due process rights.

IV.    To the extent that Groys asserts a claim under 42 U.S.C. § 1983, such a claim fails under the Rule 12(b)(6) standard.

While municipalities "cannot be found liable on a theory of vicarious liability or respondeat superior," they are directly subject to suit under § 1983. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017)). A municipality is liable under § 1983 only if the execution of its policy or custom inflicts the asserted injury. *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 204 (5th Cir. 2020) (quoting *Monell*, 436 U.S. at 694, 698); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the

constitutional violation at issue."). This inquiry is subject to a three-part test: "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymakers (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

However, without an underlying violation of his constitutional rights under the Ordinance, Groys may not proceed on a § 1983 claim against the City. *See Duarte*, 136 F. Supp. 3d at 787 (citing *Hernandez v. City of El Paso*, 2011 WL 3667174, at *6 (W.D. Tex. Aug. 18, 2011)). The Court has already determined that that the Ordinance does not violate Groys's constitutional rights. Accordingly, any claims Groys could bring under § 1983 also fail. *See id.* at 787-88.

V.    Groys is not entitled to injunctive relief because he states no other viable claims.

Groys seeks only injunctive relief in the form of an order prohibiting the City from applying or enforcing the Ordinance against him. However, a claim for injunctive relief cannot exist alone; a viable underlying legal claim is necessary. *See Germain v. U.S. Bank Nat'l Ass'n*, 2018 WL 1517860, at *9 (N.D. Tex. Mar. 28, 2018) (Lynn, C.J.). Here, the Court has already determined that Groys is unable to state a claim for relief under any of his stated legal theories. No substantive claim survives to support his request for an injunction. Accordingly, the Court finds that Groys is not entitled to injunctive relief. *See Franklin v. Beeville City, Tex.*, 2020 WL 4573369, at *8 (S.D. May 8, 2020) (recommending that the court deny the

plaintiff's claim for injunctive relief where all underlying claims lacked factual support), *rec. adopted*, 2020 WL 4569932 (S.D. Tex. Aug. 7, 2020).

### Recommendation

For the foregoing reasons, the Court should GRANT Defendant City of Richardson's Motion to Dismiss (ECF No. 16) and dismiss without prejudice Plaintiff Groys's claims as moot under Rule 12(b)(1). The Court should not grant Groys leave to amend his complaint because he is unable to state any claim under Rule 12(b)(6), and an amendment could not cure the deficiencies in Groys's claims. *See Devabhaktuni v. C.P.S.*, 2020 WL 4745048, at *3 (N.D. Tex. July 16, 2020) (Rutherford, J.) (denying leave to amend where the plaintiff's pleadings were "fatally infirm"), *rec. adopted*, 2020 WL 4732088 (N.D. Tex. Aug. 14, 2020).

**SIGNED** August 9, 2021.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).